IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISON

| | | |
|---|---|---|
| JEROME COAST JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 625-049 |
| | ) | |
| WARDEN BRIAN ADAMS; WARDEN COX; CERT TEAM JACKSON; CAPTAIN MICHEAL HARTMEYER; MS. WESTIN, Case Manager; JOHN DOE, Unknown IRT/ Cobra Squad; and JOHN DOE, Unknown IRT/Cobra Squad, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, incarcerated at Georgia Diagnostic & Classification State Prison in Jackson, Georgia brought the above-captioned case pursuant to 42 U.S.C. § 1983 regarding events allegedly occurring at Smith State Prison in Glennville, Georgia. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.  SCREENING OF THE COMPLAINT

   A.  BACKGROUND

Plaintiff names as Defendants: (1) Warden Brian Adams, (2) Cert Team Jackson, (3) Captain Michael Hartmeyer, (4) Case Manager Ms. Westin, (5) John Doe, Unknown IRT/Cobra Squad, (6) John Doe, Unknown IRT/Cobra Squad, and (7) Warden Cox. (Doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present

screening, the facts are as follows.

Plaintiff's claims arise out of a series of events occurring in March and April 2021 at Smith State Prison. (Id. at 5-7, 9-13.) In early April 2021, Defendants Jackson and John Doe placed inmate Desmond Hill in Plaintiff's cell while Plaintiff was naked "on strip cell." (Id. at 5, 9.) Plaintiff informed Defendant Jackson that inmate Hill should be housed "with one of [h]is people/gang members" and not with Plaintiff because Plaintiff was "not affiliated" with a gang. (Id.) However, Defendant Jackson ignored Plaintiff's request and placed inmate Hill, who was fully clothed, in Plaintiff's cell. (Id.) The next day, inmate Hill tried to rape Plaintiff, causing Plaintiff to kill him in self-defense. (Id.)

A few weeks prior to this incident, Defendant Hartmeyer had threatened to send an inmate to rape and kill Plaintiff. (Id.) In response, Plaintiff filed a "PREA claim" on his tablet against Defendant Hartmeyer and called the suicide hotline to report the threat. (Id. at 5, 10.) Plaintiff also told Counselor Madison about this threat and wrote a statement requesting protective custody, which he provided to the night shift lieutenant. (Id. at 5-6, 10.) Plaintiff believed "the guards" were going to send an inmate to rape and kill him because they previously "sent a hit at [him]." (Id. at 6, 10.)

At an unknown time thereafter, Cert Barns and Defendant Hartmeyer moved Plaintiff to the strip cell despite Plaintiff's requests for protective custody. (Id. at 6.) The strip cell had been recently "sprayed" without being cleaned out, yet they nonetheless placed Plaintiff inside. (Id.) When Plaintiff asked why he was moved to the strip cell, Defendant Hartmeyer told him he was being placed there because he called the suicide hotline. (Id.) Plaintiff then accused Defendant Hartmeyer of retaliation against him for filing a PREA statement about Defendant Hartmeyer's threats. (Id.) Defendant Hartmeyer stated Defendant Westin told him to place Plaintiff in the strip cell, but Plaintiff told him he was lying. (Id.)

Plaintiff later informed Counselor Dennis about the situation and clarified he did not call the suicide hotline because he was going to hurt himself, but rather because Defendant Hartmeyer had threatened him. (Id. at 7.) Counselor Dennis told Plaintiff he was under "mental health evaluation" and only Defendant Westin could take him off this status. (Id. at 7, 10.) However, Defendant Westin actually placed Plaintiff in the strip cell "as a favor" to Defendant Hartmeyer. (Id.) Plaintiff remained in the strip cell, which was freezing cold, for three weeks. (Id. at 7.)

At an unknown point, Plaintiff was let out of the strip cell and "got into it with the orderly" because the orderly placed something in Plaintiff's food. (Id. at 11.) Plaintiff threw "the tray milk and piss on the orderly," which caused another officer to get hit. (Id.) In response to the incident, Defendant John Doe appeared and punched Plaintiff. (Id. at 7, 11.) During the altercation, Defendant John Doe cut Plaintiff's elbow with a razor blade. (Id.) Plaintiff was then placed back in the strip cell, but because he was bleeding, he was thereafter taken to the medical department. (Id. at 11.) However, because the cut was deep, Plaintiff received seven to nine stitches as treatment for this injury at a "freeworld hospital." (Id. at 7, 12.)

After Plaintiff returned to Smith State Prison, someone had "blowed the light in [his] cell," cut off the water, and taken his belongings. (Id.) Defendant Hartmeyer instructed another officer to take Plaintiff back to the strip cell despite Plaintiff's protests that he had not done anything. (Id. at 7, 12.) Plaintiff was placed back in the strip cell without access to water. (Id.) Every day Plaintiff saw Defendant Adams and Cox, he informed them about what was going on, yet they completely disregarded Plaintiff's complaints. (Id. at 8, 13.) Plaintiff seeks monetary and equitable relief. (Id. at 8.)

On May 31, 2023, Plaintiff filed an amended complaint in Coast v. Adams, et al., CV 623-029, doc. no. 5 (S.D. Ga. Apr. 26, 2023) ("CV 623-029"), asserting claims against Defendants: (1) Warden Brian Adams, (2) Captain Michael Hartmeyer, (3) CERT Team Sergeant Jackson, (4)

3

Tyrone Oliver, (5) Ms. Westin, (6) Unknown Officer – IRT/Cobra Squad, (7) Warden Cox, (8) Officer Witfield, and (9) Officer Joseph Barnes. Plaintiff's amended complaint contained various allegations concerning his PREA claim against Defendant Hartmeyer based on Defendant Hartmeyer's threats to have another inmate rape and kill Plaintiff, Plaintiff's call to the suicide hotline, his placement in the strip cell as retaliation, being cut by a razor blade by an unknown officer, his return from the hospital and subsequent placement in strip cell without water, Defendant Jackson placing inmate Hill in the cell with Plaintiff, and Plaintiff's killing of inmate Hill in self-defense after the attempted rape. Id., pp. 4-5, 12-14.

On July 20, 2023, the Court screened Plaintiff's amended complaint and ordered service of process for the retaliation claim against Defendant Hartmeyer. Id., doc. nos. 10-12. The Court recommended the remaining Defendants, as well as the failure to protect claim and any official capacity claim for monetary damages against Defendant Hartmeyer, be dismissed for failure to state a claim. Id., doc. no. 10. On August 14, 2023, United States District Judge J. Randal Hall adopted the Magistrate Judge's Report and Recommendation ("R&R"). Id., doc. no. 15.

On June 17, 2024, Defendant Hartmeyer filed a motion for summary judgment. Id., doc. nos. 39-42. On July 25, 2024, the Court recommended Defendant Hartmeyer's motion be granted because the record evidence and undisputed facts revealed no causal connection between the protected activities – the PREA complaint and suicide hotline call – and retaliatory action. Id., doc. no. 43-1. On August 29, 2024, Judge Hall adopted the R&R, and a final judgment was entered in favor of Defendant Hartmeyer. Id., doc. nos. 46-47. About 284 days later, Plaintiff filed this instant suit containing the same claims as CV 623-029. (See generally doc. no. 1.)

    **B.    DISCUSSION**

        **1.    Legal Standard for Screening**

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails

4

to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (per curiam) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450

F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's Suit is Barred by Claim Preclusion

"The doctrine of claim preclusion (or *res judicata*) bars the parties to an action from relitigating matters that were or could have been litigated in an earlier suit." Shurick v. Boeing Co., 623 F.3d 1114, 1116 (11th Cir. 2010). For the doctrine to apply, four elements must be met: "(1) a court of competent jurisdiction has (2) rendered a final judgment on the merits in another case involving (3) the same parties and (4) the same cause of action." Id. at 1116-17. Additionally, the party must have had "a full and fair opportunity to litigate the claims and issues settled in a previous suit." Morris v. May, 570 F. App'x 903, 905 (11th Cir. 2014). To determine whether the causes of action are the same, courts look to the factual issues in the second lawsuit and compare them to the first lawsuit, and if the case arises out of the same nucleus of operative fact, then the "two cases are really the same." Id. at 906.

The facts in the present case are precisely the same as Plaintiff alleged in CV 623-029. See CV 623-029, doc. no. 5, pp. 4-5, 12-15. Aside from the deletion of Defendants Tryone Oliver, Officer Witfield, and Joseph Barnes and the addition of a second John Doe, Unknown IRT/Cobra Squad Defendant, the Defendants alleged in the instant case mirror the named defendants in his other case. See id.; (doc. no. 1.) Moreover, the claims arise from the same common nucleus of operative fact. See, e.g., Simmons v. Coffee Co., No. 5:14-cv-19, 2014 WL 6455137, at *4 (S.D. Ga. Nov. 13, 2014) ("Plaintiff asserts the same causes of action against these Defendants[] because the two cases arise out of the same nucleus of operative fact—Plaintiff's imprisonment following his arrest and the property dispute."). Specifically, in both cases, Plaintiff claims Defendant Hartmeyer threatened to have another inmate rape and kill him, leading Plaintiff to submit a PREA complaint and call the suicide hotline. CV 623-029, doc. no. 5; (doc. no. 1.) He also alleges he was placed in the strip cell during various periods as

6

retaliation, was injured by a razor blade, and thereafter killed another inmate in self-defense after Defendant Jackson placed this inmate in the strip cell. See id.

In CV 623-029, the Court first screened Plaintiff's amended complaint, ordered service on Defendant Hartmeyer for the retaliation claim, and dismissed the remaining defendants and claims for failure to state a claim. CV 623-029, doc. nos. 10-12. Later, the Court granted the Defendant Hartmeyer's motion for summary judgment on Plaintiff's retaliation claim. Id., doc. no. 46. Thus, Plaintiff's claims were all "adjudication[s] on the merits for *res judicata* purposes." Harmon v. Webster, 263 F. App'x 844, 845 (11th Cir. 2008) (*per curiam*). In sum, Plaintiff was given a full and fair opportunity to litigate his claims and cannot now attempt to re-litigate the claims. Morris, 570 F. App'x at 905.

### 3.      Plaintiff's Claims Are Time-Barred

Even if Plaintiff's case was not barred by claim preclusion, Plaintiff's claims are nevertheless time-barred. Plaintiff's claims are subject to dismissal under the statute of limitations applicable in Georgia. State law controls the length of the statute of limitations period in § 1983 actions. Chapman v. Dunn, 129 F.4th 1307, 1315 (11th Cir. 2025); Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga., 248 F. App'x 116, 117 (11th Cir. 2007) (*per curiam*). In Georgia, such claims for injuries to the person must be brought within two years of their accrual. Richards v. Cobb Cnty., Ga., 487 F. App'x 556, 557 (11th Cir. 2012) (*per curiam*); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations period for claims under § 1983, federal law determines the date of accrual. See Chapman, 129 F.4th at 1315 (citing Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996)). Under § 1983, a claim accrues "once the plaintiff knows or should know 'the injury that forms the basis of [his] complaint,' as well as who caused that injury." Id. (citing Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003)

7

(*per curiam*)); see also Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*).

Here, Plaintiff dated his complaint May 28, 2025, and the Court received it for filing on June 9, 2025. (See doc. no. 1.) However, Plaintiff's alleged claims took place between March 2021 and April 2021.[1] (Id. at 5-7, 9-13.) Therefore, the facts which would support a cause of action were apparent to Plaintiff by at least April 2021, thus, they are outside of the two-year statute of limitations period and subject to dismissal.

## II. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of August, 2025, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] Plaintiff provides he killed the other inmate in self-defense on April 7 or 8, 2021. (Doc. no. 1, pp. 5, 9.) He then describes the series of events leading up to this incident, though he does not supply any exact dates. (See generally id.) In the form question asking when the alleged events took place, Plaintiff wrote "2021 March [and] April." (Id. at 5.) Based on the foregoing, the lack of exact dates need not delay the Court because April 8, 2021, the latest date on which Plaintiff's claims occurred, was well over two years ago and is thus barred by the statute of limitations. Plaintiff's claims about events preceding this date are likewise time-barred.